# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **JENEAN ELIZABETH WINSTON and ROBERT E. HERNDON,** *Temporary Administrator of the Estate of Dylan Mark Walsh*, | |
| *Plaintiffs,* | **CIVIL ACTION NO. 5:19-cv-00070-TES** |
| **v.** | |
| **MARK ANTHONY WALSH,** | |
| *Defendant.* | |

## ORDER DISMISSING CASE FOR LACK OF PERSONAL JURISDICTION DUE TO INSUFFICIENT SERVICE OF PROCESS

This lawsuit attempts to renew a previous state-court action Plaintiff Jenean Elizabeth Winston voluntarily dismissed. In it, she and Plaintiff Robert E. Herndon, the mother and estate administrator, respectively, of decedent Dylan Mark Walsh, seek damages against Defendant Mark Anthony Walsh, Dylan's father, for negligence and wrongful death under Georgia law.

In its most general sense, this case concerns whether Plaintiffs properly served Walsh, a British national, via the Hague Convention and raises personal jurisdiction, service of process, and statute-of-limitations issues. In defense of these claims, Walsh makes two main arguments. First, in a pending Motion for Summary Judgment [Doc. 33], Walsh argues that this action, as a whole, is time-barred because Winston never

properly served him in the original state-court lawsuit, rendering it void and therefore unrenewable. Second, he contends that the Court cannot currently exercise personal jurisdiction over him because he has not been properly served in this action.[1] Because Walsh is correct in his second argument, the Court cannot rule on his first. As explained below, the Court **DISMISSES** this case for lack of personal jurisdiction because Plaintiffs never properly served Walsh.

## FACTUAL BACKGROUND

Jenean Winston and Mark Walsh divorced on June 1, 2015, and as part of the divorce settlement, they agreed to joint custody of their three-year-old child, Dylan. [Doc. 19 at ¶¶ 13–15]. On August 1, 2015, Walsh took Dylan to the Fish 'N Pig, a restaurant abutted by a lake and several docks in Macon, Georgia. [*Id.* at ¶ 17]. At the

---

[1] Just to be clear, Walsh filed an earlier motion to dismiss under Federal Rule of Civil Procedure 12(b)(5). [Doc. 5]. In response, Plaintiffs sought leave to amend their Complaint, which the Court partially granted. [Doc. 18]. The Court also denied Walsh's motion as moot in light of Plaintiffs' leave to amend, explaining that it lacked evidence to rule on the sufficiency of service and allowed the parties 90 days to conduct discovery on that and other issues. [*Id.* at pp. 15–17]. After receiving the Amended Complaint, [Doc. 19], Walsh filed a second motion to dismiss, raising, among other things, the same issue relating to service. [Doc. 21-1 at pp. 19–20]. The Court again declined to rule on Walsh's motion because, at that time, it wanted to receive all arguments relating to the procedural posture of the case at once, whether they dealt with Rule 12(b)(6), 12(b)(5) or summary judgment related to statute-of-limitations issues. [Doc. 24]. The Court never intended to dismiss Walsh's Rule 12(b)(5) motion outright; rather, it simply delayed ruling in order to allow the parties to present evidence gathered during the limited discovery period as mentioned in the Order [Doc. 18] allowing Plaintiffs to amend. Although Walsh reiterates his arguments concerning Rule 12(b)(5) in his summary judgment motion, the Court accepts them in support of his second motion to dismiss as it indicated it would in its earlier Order. [Doc. 18 at p. 16 ("Therefore, the Court will allow the parties an appropriate amount of time to conduct limited discovery into this issue and present briefs to the Court should they so desire.")]. Simply put, the Court understands that Walsh's Rule 12(b)(5) motion is nonetheless pending so far as it relates to questions other than statute-of-limitations issues.

end of the evening, Walsh took Dylan down to a dock to see the boats, but at some point, after playing in and around the boats next to the dock, Walsh lost track of Dylan. [*Id.* at ¶¶ 20–21, 32–34]. When no one could find Dylan, a security guard at the restaurant called local law enforcement. [*Id.* at ¶¶ 21, 23]. The search continued through the night; however, Macon-Bibb County Fire Department divers recovered Dylan's body under a dock the next morning around 10:00. [*Id.* at ¶¶ 27, 53]. On August 20, 2015, five days after Dylan's funeral, the District Attorney for the Macon Judicial Circuit publicly announced that his office would not pursue any criminal charges against Walsh in relation to Dylan's death. [*Id.* at ¶ 101].

Initially, Winston sued Walsh in the Superior Court of Bibb County, Georgia, on August 1, 2017—literally 35 minutes before what she believed to be the expiration of the controlling statute of limitations. O.C.G.A. § 9-3-33 ("Actions for injuries to the person shall be brought within two years after the right of action accrues . . . ."). Winston later dismissed her state-court lawsuit on September 5, 2018. On the last possible day to do so, Plaintiffs filed this lawsuit under Georgia's renewal statute, a unique statutory provision allows a state-court plaintiff to renew a timely-filed case even if she previously chose to discontinue or dismiss it. O.C.G.A. § 9-2-61(a).

Renewal actions may be filed in a Georgia state court or a federal court, but the original discontinued or dismissed state-court action must have been filed within the applicable statute of limitations in order for it to be valid. *See id.* ("When any case has

been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later[.]"). If the original action was timely filed and not void, it relates back to the original filing date, and any statute-of-limitations issues are irrelevant. However, if for some reason the original suit is void, it cannot be renewed if the applicable limitations period has since expired. *Lathan v. Hospital Auth. of Charlton Cty.*, 805 S.E.2d 450, 454 (Ga. Ct. App. 2017) (quoting *Coles v. Reese*, 730 S.E.2d 33, 34 (Ga. Ct. App. 2012)).

As explained in an earlier Order, however, we know that the two-year limitations period on Winston's claims was tolled for 19 days—the amount of time between the date of Dylan's death (August 1, 2015) and the date the district attorney announced he would not pursue criminal charges (August 20, 2015). [Doc. 18 at pp. 10–15]; O.C.G.A. § 9-3-99.[2] Applying the 19-day tolling period, the statute of limitations for Winston to file her negligence and wrongful death claims ran on Monday, August 21, 2017, and her state-court lawsuit filed on August 1, 2017, was timely. Fed. R. Civ. P.

---

[2] The relevant tolling provision provides:

> The running of the period of limitations with respect to any cause of action in tort that may be brought by the victim of an alleged crime which arises out of the facts and circumstances relating to the commission of such alleged crime committed in this state shall be tolled from the date of the commission of the alleged crime or the act giving rise to such action in tort until the prosecution of such crime or act has become final or otherwise terminated, provided that such time does not exceed six years . . . .

O.C.G.A. § 9-3-99.

6(a)(1); *see also* O.C.G.A. § 9-11-6(a); O.C.G.A. § 1-3-1(d)(3). However, just because the original state-court action was timely filed and any statute-of-limitations issues relating to filing may have been resolved, the analysis does not end there.

Again, the original state-court action must have also been valid and not void. An original suit is void "if service was never properly perfected, 'and a void lawsuit cannot be renewed outside the period of limitation.'" *Lathan*, 805 S.E.2d at 454 (quoting *Coles*, 730 S.E.2d at 34). This is the core of Walsh's summary judgment arguments: that the original state-court action was void, and now time-barred, because Winston never properly perfected service in that suit. [Doc. 33-2 at p. 9].

However, in the final pages of both his brief in support of his summary judgment motion and a previous Motion to Dismiss[3] [Doc. 21], Walsh calls the Court's jurisdiction into question and seeks dismissal for insufficient service of process. [Doc. 33-2 at pp. 17–18]; [Doc. 21-1 at pp. 19–20]; *see Martin v. U.S. Bank Nat'l Assoc.*, No. 3:14-cv-00069-TCB-RGV, 2014 WL 12538167, at *3 (N.D. Ga. Oct. 4, 2014). Service of process is a jurisdictional requirement, and a court lacks jurisdiction over the person of the defendant when he has not been served. *Igbinigie v. Wells Fargo Bank, N.A.*, No. 3:08-CV-

---

[3] The Court previously denied this dismissal motion "to the extent it concern[ed] tolling and . . . [statute-of-limitations]" arguments because those arguments "are more suited to summary adjudication." [Doc. 24 at p. 4]; [Doc. 18 at pp. 7–8 (citing *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004))]. Now, with the benefit of a 90-day, limited discovery period (to uncover facts related to service and statute-of-limitations issues), Walsh, via his latest Rule 12(b)(5) motion, reasserts his argument that the Court lacks personal jurisdiction over him with respect to this action. [Doc. 33-2 at pp. 17–18]; *see also* n.1, *supra.*

58 (CDL), 2008 WL 4862597, at *1 (M.D. Ga. Nov. 10, 2008) (quoting *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990)). "By definition, 'service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served.'" *Prewitt Enters., Inc. v. Organization of Petroleum Exp. Countries*, 353 F.3d 916, 921 (11th Cir. 2003) (quoting *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444–45 (1946)). Further, it is reversible error for a district court to address the merits of a cause of action when the plaintiff has failed to properly effect service of process in accordance with Federal Rule of Civil Procedure 4. *Igbinigie*, 2008 WL 4862597, at *1 (citing *Jackson v. Warden, FCC Coleman-USP*, 259 F. App'x 181, 182–83 (11th Cir. 2007) (per curiam)); *see also Wilson v. Prudential Fin.*, 332 F. Supp. 2d 83, 89 n.2 (D.D.C. 2004). Accordingly, because the Court, for the reasons explained below, determines that Plaintiffs failed to properly serve Walsh in substantial compliance with the Federal Rules of Civil Procedure, *see Prewitt*, *infra*, it lacks the authority to address his summary judgment arguments. Specifically, the Court is without jurisdiction to determine whether Winston's original state-court action was void for failure to perfect service and, therefore, unable to be renewed.

## DISCUSSION

Although the questions of personal jurisdiction and service of process are closely related, the latter is merely the means by which a federal court gives notice to the defendant and asserts jurisdiction over him. 5B Wright & Miller Federal Practice and

Procedure Civil 3d § 1353, at 338. The inquiry presented in this case concerns Federal Rule of Civil Procedure 12(b)(5) and its connection to Rule 4. Walsh argues that because Plaintiffs have yet to properly serve him in this action, the Court cannot exercise its personal jurisdiction over him so that dismissal is required.

## A. Rule 12(b)(5)

To begin, in *Cambridge Mut. Fire Ins. v. City of Claxton*, the Eleventh Circuit Court of Appeals acknowledged that Federal Rule of Civil Procedure 4 governs service of process in diversity cases. 720 F.2d 1230, 1232 n.2 (11th Cir. 1983). If the plaintiff fails to serve the defendant in accordance with Rule 4, the defendant may move to dismiss the case under Rule 12(b)(5). *Auto-Owners Ins. v. Smith*, No. 1:18-cv-05737-SCJ, 2019 WL 5701294, at *1 (N.D. Ga. Apr. 9, 2019) (citing Fed. R. Civ. P. 12(b)(5)). "Initially, the defendant has the burden of challenging the sufficiency of service and 'must describe with specificity how the service of process failed to meet the procedural requirements of [Rule 4].'" *Id.* (quoting *Hollander v. Wolf*, No. 09–80587–CIV, 2009 WL 3336012, at *3 (S.D. Fla. Oct. 14, 2009)).

Once the defendant meets that burden, it shifts to the plaintiff to prove a prima facie case of proper service. *Id.* "How the plaintiff discharges that burden depends on the method of service employed." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2018 WL 4681616, at *7 (S.D.N.Y. Sept. 11, 2018). When service is made abroad pursuant to the Hague Convention, as permitted by

Federal Rule of Civil Procedure 4(f)(1), "the adequacy of that service must be proved 'as provided in the applicable [treaty or convention].'" *Id.* (quoting Fed. R. Civ. P. 4(*l*)(2)(A)). Then, "[i]f the plaintiff can establish that service was proper, . . . the burden shifts back to the defendant to 'bring strong and convincing evidence of insufficient process.'" *Auto-Owners*, 2019 WL 5701294, at *1 (quoting *Hollander*, 2009 WL 3336012, at *3). Any factual question raised by affidavits or other evidence is to be determined by the district court in accordance with Federal Rule of Civil Procedure 12(d). *Id.* ("The Court may look to affidavits, depositions, and oral testimony to resolve disputed questions of fact."); *see also* 5B Wright & Miller Federal Practice and Procedure Civil 3d § 1353, at 345 (citations omitted).

As to the first part of the burden-shifting scheme, Walsh contends that Plaintiffs failed to meet the procedural requirements under the Hague Convention, and by extension Rule 4(f)(1), since "the address where he was allegedly served . . . in this action is not an address where he resides or otherwise lives, but is the address of his sister." [Doc. 33-2 at p. 17]. Now, the burden shifts to Plaintiffs to prove a prima facie case of proper service.

**B.    <u>The Hague Convention</u>**

Here, Plaintiffs chose to serve Walsh via the Hague Convention. As a multilateral treaty, the purpose of the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, 20 U.S.T. 361, *infra,* is to "simplify,

standardize, and generally improve the process of serving documents abroad." *Water*

*Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017) (citations omitted). The Hague

Convention requires that each signatory nation "establish a [C]entral [A]uthority to

receive requests for service of documents from other countries." *Id.* at 1508 (quoting

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988)). When a Central

Authority receives a proper request under Article 5 of the Hague Convention, "it must

serve the documents by a method prescribed by the internal law of [its] state or by a

method designated by the requester and compatible with that law." *Schlunk*, 486 U.S. at

699; *see also* Convention on Service Abroad of Judicial and Extrajudicial Documents in

Civil and Commercial Matters art. 5, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6,638. In

other words, for service on Walsh to be proper in this case, Plaintiffs must have served

him in accordance with English service laws from the United Kingdom in order to

comply with both the Hague Convention and Rule 4(f)(1).

Article 6 of the Hague Convention provides that when a signatory nation's

Central Authority "has served a document or caused it to be served, it 'shall complete a

certificate' which 'shall state that the document has been served and shall include the

method, the place and the date of service and the person to whom the document was

delivered.'" *Joint Stock*, 2018 WL 4681616, at *8 (quoting 20 U.S.T. 361, art. 6). In the

Second and Eighth Circuits, the return of a completed Article 6 Certificate by a Central

Authority "establishes prima facie evidence that the Central Authority's service on [the

defendant] was made in compliance with the [C]onvention . . . and local law." *Id.*

(quoting *Unite Nat'l Ret. Fund v. Ariela, Inc.*, 643 F. Supp. 2d 328, 334 (S.D.N.Y. 2008));[4]

*see also Northrup King*, *infra*. When evaluating service under the Hague Convention,

some circuits' deference to an Article 6 Certificate is particularly gracious to a plaintiff

seeking to serve a defendant. *See, e.g.*, *Joint Stock*, 2018 WL 4681616, at *8 (quoting *Burda*

*Media, Inc. v. Viertel*, 417 F.3d 292, 301 (2d Cir. 2005) ("The Hague Convention 'should be

read together with Rule 4, which stresses actual notice, rather than strict formalism.'")).

However, while the Eleventh Circuit Court of Appeals has not considered this

specific issue, it appears to take a less gracious stance. Although actual notice of a

lawsuit is an important factor in considering the adequacy of proper service, "courts are

typically careful to determine whether service of process was in *substantial compliance*

with the formal requirements of the Federal Rules." *Codigo Music, LLC v. Televisa S.A. de*

*C.V.*, No. 15-CIV-21737-WILLIAMS/SIMONTON, 2017 WL 4346968, at *12 (S.D. Fla.

Sept. 29, 2017) (citing *Prewitt*, 353 F.3d at 925) (emphasis added). Faced with a similar

service issue, the Eleventh Circuit Court of Appeals stated, with respect to due process

requirements for personal jurisdiction, that "there must be *more than* notice to the

defendant . . . [t]here also must be a basis for the defendant's amenability to service of

---

[4] In *Unite Nat'l Ret. Fund*, the district court declined to "look behind the certificate of service" to adjudicate issues of Mexican procedural law, even though the defendant "never received any of the service documents." 643 F. Supp. 2d at 335–36. Instead, the court found that the defendant's sworn denials of service did not rebut the presumption of proper service established by a process server's affidavit. *Id.* at 336.

summons." *Prewitt*, 353 F.3d at 925 (quoting *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484

U.S. 97, 104 (1987)). "Absent consent," or ostensibly, the defendant's waiver of service,

"this means there must be *authorization* for service of summons on the defendant." *Id.*

"In other words, an individual or entity is not obliged to engage in litigation *unless*

*officially notified* of the action under a court's authority, *by formal process*." *Id.* (quoting

*Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999)) (cleaned up and

emphasis added).

So, in *Prewitt*, the Eleventh Circuit Court of Appeals made it clear that more than

the defendant's actual notice of the suit is required for service. 353 F.3d at 925 ("[E]ven

though [the defendant] had actual notice of the filing of the suit, service of process was

ineffective because it was clearly not in substantial compliance with the requirements of

[Federal Rule of Civil Procedure] 4(f)(2)(C)(ii)."). Taking guidance from the holding in

*Prewitt*, the Court carefully considered the service-related facts in this case and whether

Plaintiffs service attempt on Walsh was in "substantial compliance" with Rule 4(f)(1).

Here, both the United States and the United Kingdom are signatories to the

Hague Convention, 20 U.S.T. 361; thus, service of process on Walsh in the United

Kingdom must conform to the requirements of the Hague Convention. *Unite Nat'l Ret.*

*Fund*, 643 F. Supp. 2d at 332–33. And, in order to conform to the Convention, Plaintiffs'

service attempt must also comply with English law and its requirements for service on

an individual in order to be proper under Rule 4(f)(1).

For starters, Plaintiffs' efforts to serve Walsh in the United Kingdom ultimately produced a facially valid Article 6 Certificate from the Foreign Process Section of the Senior Courts of England and Wales. [Doc. 9 at p. 1]; *Joint Stock*, 2018 WL 4681616, at *10. When there is no claim that the plaintiff failed to comply with the Hague Convention, that the Certificate is inadequate under Article 6, or that service violates local law, there is no basis for a court to "look behind" the Article 6 Certificate to second guess validity of service. *Joint Stock*, 2018 WL 4681616, at *10.

The prima facie showing of proper service provided by an Article 6 Certificate may be rebutted by arguing a lack of actual notice of a lawsuit or by indicating some sort of prejudice due to a lack of proper service. Walsh never makes either of these arguments. And other circuits have suggested that the absence of these arguments is enough for the Court to refuse to "look behind" the English Central Authority's Article 6 Certificate. *See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1389 (8th Cir. 1995) (declining to "go behind [the] certificate" to find non-compliance with the Hague Convention but suggesting that the prima facie evidence of proper service may be rebutted by lack of actual notice or some showing of prejudice). However, since Walsh attacks the Hague Convention's very application to him because Plaintiffs failed to serve him as required by the law of the local state (England and Wales), the aforementioned cases are distinguishable. Thus, given the

nature of Walsh's arguments—that Plaintiffs used the wrong address to serve him—the Court must "look behind" the Article 6 Certificate.

### C.     Walsh's Arguments That the Hague Convention Does Not Apply

First, Walsh argues that "any attempt at service under the Hague [C]onvention is ineffective" without a known address. [Doc. 33-2 at p. 12 ("[T]he Hague Convention at Article 1 only allows for service on those abroad when the address for the person to be served is known[.]")]; [Doc. 37 at p. 4 ("Simply put, Plaintiffs did not know Walsh's address and the Hague [C]onvention does not apply.")]; 20 U.S.T. 361, art. 1 ("This Convention shall not apply where the address of the person to be served with the document is not known."). Second, he attacks the validity of the Article 6 Certificate with respect to local law, specifically, the Civil Procedure Rules of England and Wales. [Doc. 33-2 at pp. 17–18 ("Plaintiffs have failed to properly serve under [Rule 6.3(1)(c) of the Civil Procedure Rules of England and Wales].")]; [Doc. 37 at pp. 4–5]. Because issues regarding English service laws control in this case, the Court will focus its analysis there. *See Unite Nat'l Ret. Fund*, 643 F. Supp. 2d at 332–33.

As briefly discussed above, Plaintiffs filed this lawsuit attempting to renew the previous action Winston voluntarily dismissed in the Superior Court of Bibb County, Georgia. [Doc. 1 at p. 28]; [Doc. 36-1 at ¶ 1]; [Doc. 30-1, Tate Decl., ¶ 61]. Albeit with one day to spare under the six-month deadline to file a renewal action, this lawsuit is

timely. *See* O.C.G.A. § 9-2-61(a) *in connection with* [Doc. 1 at p. 27]. Now the question becomes: Was Walsh served in *this* lawsuit? The short answer is no and here's why.

With regard to service in this lawsuit, Plaintiffs attempted to serve Walsh in the United Kingdom under Article 5 of the Hague Convention and listed Terra Nova, New Road, Mockbeggar, Ringwood, BH24 3NJ, as the address for service. [Doc. 9 at p. 1]. No one reasonably disputes that Walsh's sister owns this property, lives there, and operates a bed and breakfast on it. [Doc. 30-1, Tate Decl., ¶ 44]. Plaintiffs discovered this address after what appears to be weeks of research by their attorney when Winston was trying to serve Walsh in the original state-court action. *See* [*id.* at ¶¶ 41–56]. In his research, Plaintiffs' attorney discovered that Walsh's wife (or, according to Walsh, accountants representing his sister) designated the Terra Nova address as her residence three times between April 2017 and April 2018 on documents filed with Companies House[5] in connection with a business she started with Walsh's sister. [*Id.* at ¶¶ 42–44, 46–49]; [Doc. 33-3, Walsh Aff., ¶ 19]; *see, e.g.,* [Doc. 30-10 at p. 5]; [Doc. 30-11 at p. 2]. Additionally, United States Customs data indicated that Walsh was listed as "consignee" on bills of

---

[5] Companies House is the United Kingdom's registrar of companies and executive agency and trading fund of Her Majesty's Government. [Doc. 30-1, Tate Decl., ¶ 42].

lading[6] for "at least [four] shipments of Land Rover vehicles" between October 2016 and July 2017—all received from the foreign port of Southampton in the United Kingdom by a United States port in Brunswick, Georgia. [Doc. 30-1, Tate Decl., ¶¶ 53–54]; [Doc. 30-13 at pp. 2, 4, 6, 8]; [Doc. 36-1 at ¶ 14]. Each bill of lading listing Walsh as the consignee identified the shipping address as a home owned by Walsh at 106 Lakeridge Lane, Macon, Georgia, and identified the "shipper" as "Terra Nova,"[7] with New Road, Mockbeggar, Ringwood, Great Britain, as its address. [Doc. 30-13 at pp. 2, 4, 6, 8]; [Doc. 30-1, Tate Decl., ¶ 54]; [Doc. 22-3, Walsh Aff., ¶ 5].

To put all of this into context, Plaintiffs' attorney explains that the same address provided to Companies House on various business documents (one of which was the certificate of incorporation for Walsh's wife's business) was also used by Walsh multiple times to identify the address of an anonymous shipper to United States Customs for Walsh's shipment of his Land Rovers from the United Kingdom to the United States in 2016 and 2017. [Doc. 30-1, Tate Decl., ¶¶ 55, 64 (stating that prior to

---

[6] "A bill of lading is the basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers." *Norfolk S. Ry. v. Groves*, 586 F.3d 1273, 1275 n.1 (11th Cir. 2005) (cleaned up). A consignee is "[o]ne to whom goods are consigned. A consignee acts as the agent of the consignor. The person named in a bill to whom or to whose order the bill promises delivery." Consignee, *Black's Law Dictionary* (11th ed. 2019). "'Consignee' means the person named in a bill of lading as the person to whom the goods are to be delivered." *See* 49 U.S.C. § 80101(1).

[7] Presumably, in an effort to be thorough, Plaintiffs' attorney "diligently searched the Companies House database and [found that] no company named 'Terra Nova' listed" the address provided on each of Walsh's bills of lading. [Doc. 30-1, Tate Decl., ¶ 54]. In actuality, as shown by the corporate documents for the business started by Walsh's wife and his sister, "Terra Nova" is part of the address itself, not the name of an individual who could be listed as a "shipper." [*Id.*]; *see, e.g.*, [Doc. 30-10 at p. 3].

submitting the proposed summons for this lawsuit, Plaintiffs' attorney discovered that since attempting service in the original state-court action, four out of five additional bills of lading using the Terra Nova address had been submitted for Land Rovers that Walsh shipped from the United Kingdom to the United States)]; *see also* [Doc. 30-10 at p. 3]; [Doc. 30-11 at p. 2]; [Doc. 30-12 at p. 2]; [Doc. 30-13 at pp. 2, 4, 6, 8]. Plaintiffs' attorney used this "confluence of data points," as a "basis for serving . . . Walsh at [the Terra Nova] address." [Doc. 30-1, Tate Decl., ¶ 56]. To say it another way, Plaintiffs essentially want the Court to use these same "data points" to effectively rule that the Terra Nova address is, as a matter of fact and law, Walsh's residence, whether he actually lived there or not.

Plaintiffs' selected method of service under the Hague Convention, Article 5(a), states that: "The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, . . . by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory." [Doc. 9 at p. 1]; *see also* 20 U.S.T. 361, art. 5. On March 22, 2019, the Foreign Process Section of the Senior Courts of England and Wales, "in conformity with [A]rticle 6 of the Convention," certified that "[t]he documents were served by posting them through the defendant's post box" at the Terra Nova address. [Doc. 9 at p. 1]. That service, according to the Article 6 Certificate, "is good service under rule

6.3(1)(c) of the Civil Procedure Rules of England and Wales." [*Id.*]. Walsh, of course, argues otherwise.

Boiled down, Walsh's argument (despite the certification stating that he "has been served" at the Terra Nova address "under rule 6.3(1)(c) of the Civil Procedure Rules of England and Wales") is that Plaintiffs' service attempt in this case is invalid under local law because the Terra Nova address is not his "residence."[8] [*Id.*]; [Doc. 33-2 at p. 17 (Walsh claims that "the [Terra Nova] address where he was allegedly served . . . in this action is not an address where he resides or otherwise lives, but is the address of his sister.")].

As noted earlier, the local law at issue is rule 6.3(1)(c) of the Civil Procedure Rules of England and Wales. This rule provides that "[a] claim form[9] may . . . be served by . . . leaving it at a place specified in rule 6.7, 6.8, 6.9 or 6.10[.]" Ministry of Justice, Part

---

[8] No one has offered the Court any evidence that the Central Authority investigated to see if Walsh, in fact, lived at the Terra Nova address. And, in all actuality, it didn't because the Hague Convention doesn't require the Central Authority to do so. Rather, the treaty requires the Central Authority to serve the defendant at the address supplied by the foreign plaintiff. *See* 20 U.S.T. 361, art. 3; *see, e.g.*, [Doc. 30-14 at p. 2]. The burden is on Plaintiffs to determine Walsh's actual *residence* and provide that address to the Central Authority. The fact that the English Central Authority's Article 6 Certificate says that Walsh was served in accordance with English service laws does little to help Plaintiffs' case since they did not provide the correct address for service at his *residence*. Had Plaintiffs "ascertained" (as discussed below) Walsh's correct address or sought service under rules 6.9(c)(4)–(6) permitting an alternative "place where or a method by which service may be effected," they could have properly served him. Ministry of Justice, Part 6 - Service of Documents, https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part06#6.9 (last visited Mar. 25, 2020).

[9] The Civil Procedure Rules of England and Wales interpret "claim" to include "petition and any application made before action or to commence proceedings and 'claim form', 'claimant' and 'defendant' are to be construed accordingly[.]" Ministry of Justice, Part 6 - Service of Documents, https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part06#6.2 (last visited Mar. 25, 2020).

6 - Service of Documents, https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part06#6.3 (last visited Mar. 25, 2020). Of these rules, only 6.9 deals with service on individuals.[10] Ministry of Justice, Part 6 - Service of Documents, https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part06#6.9 (last visited Mar. 25, 2020). Under English law, when the defendant to be served is an individual, like Walsh, he must be served at his "[u]sual or last known *residence*." *Id.* (emphasis added).

Walsh claims that he has "never resided at Terra Nova, New Road, Mockbeggar, Ringwood, BH23 3NJ," and there is nothing in the record to suggest that he did. [Doc. 5-2, Walsh Aff., ¶ 8]; *see also* [Doc. 30-1, Tate Decl., ¶ 66 (confirming Plaintiffs' notice of Walsh's claim that he never resided at the Terra Nova address)]; [Doc. 33-3, Walsh Aff., ¶ 20 (stating that Walsh and his wife "have never resided at the Terra Nova address")]. By his account, Plaintiffs failed to comply with English law for service on individuals when they attempted to serve him at the Terra Nova *address*, as opposed to his actual *residence*. *See* Ministry of Justice, Part 6 - Service of Documents, https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part06#6.9 (last visited Mar. 25, 2020); *see also Prewitt*, *supra*. The Court agrees.

---

[10] Rule 6.7 permits service on a solicitor or European lawyer within the United Kingdom, rule 6.8 allows the defendant to, before service, give an address at which he may be served, and rule 6.10 concerns service of a claim form in proceedings against the Crown. *See* Ministry of Justice, Part 6 - Service of Documents, https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part06#6.7, https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part06#6.8, https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part06#6.10 (last visited Mar. 25, 2020).

Although neither party provided the Court with guidance as to how English law construes rule 6.9's phrase "usual or last known residence," there are a couple of cases that provide a great indication to its definition. Ministry of Justice, Part 6 - Service of Documents, https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part06#6.9 (last visited Mar. 25, 2020). First, in *Varsani v. Relfo Ltd (In Liquidation)*, the English Court of Appeal concluded that "the critical test" for determining residence under rule 6.9 "is the defendant's pattern of life." [2010] EWCA (Civ) 560, 2010 WL 1990741 (Eng.). There, the appellant, who had "more than one 'usual' residence" had a "settled pattern of . . . life" to visit a particular address "as his family home, regularly each year." *Id*. While this is a drastically different scenario than the one depicted by the facts in this case, *Varsani* is still helpful in guiding the Court to an English-law definition of "residence." Walsh undoubtedly, as evidenced by him parking his Land Rovers there, visits the Terra Nova address; but there is nothing to definitively suggest that his "pattern of life" includes actually living there so as to make it a "usual" residence. [Doc. 33-3, Walsh Aff., ¶ 15]. Again and again, Walsh states that he never resided at the Terra Nova address, and there is nothing to show that Plaintiffs knew differently. *See, e.g.*, [Doc. 33-3, Walsh Aff., ¶ 20]; [Doc. 19 at ¶ 7 ("After reasonable diligence, as of the date of this filing, Plaintiffs have yet to learn Walsh's address where he may be served, and Walsh has not disclosed it.")].

Second, in *Collier v. Williams*, the English Court of Appeal stated that a lower-court judge "was right to hold that service was not effected on the defendant's last known residence for the simple reason that he had never resided [there]." [2006] EWCA (Civ) 20, 2006 WL 63678, at *263 (Eng.). To support its decision, the English court reasoned that the draftsman of rule 6.9 "deliberately chose" the "use of the concept of knowledge." *Id.* at *263–64. It was that court's view that "knowledge in this context refers to the serving party's actual knowledge or what might be called [her] constructive knowledge," or "knowledge which [she] could have acquired exercising reasonable diligence." *Id.* at *264. Under its analysis, "[t]here is no other area of the law where the concept of knowledge is equated with that of belief." *Id.* at *263. Going further, the English court explained that "[a]s a matter of the ordinary meaning of words, to say 'I know X' entails the proposition that 'X is true,'" and in interpreting this rule, the court did "not see how the phrase 'last known residence' [could] be extended to an address at which the individual to be served has never resided." *Id.*

According to *Collier*, if the claimant attempts service at "an address which [she] mistakenly believes is the last known residence of the defendant, it is therefore necessary to consider the reasonableness of [her] belief." *Id.* at *272. Moreover, in the event "the claimant is misled by the defendant as to his residence, then the court is likely to hold that the claimant had reasonable grounds for [her] belief." *Id.* In those

circumstances, "the defendant may even be estopped from denying that the address to which the document is sent is his last known residence." *Id.*

As with American jurisprudence,

it is incumbent on a claimant to take reasonable steps to ascertain a defendant's last known residence. What that involves must depend on the circumstances of the case. In many cases, the claimant will know the address for certain. Where the position is less clear, . . . [o]ther enquiries [*sic*] may have to be made.

*Id*. *Collier* undeniably shows how dangerous it can be to make assumptions. *Id.* Like Plaintiffs, the claimant in *Collier* "did not have a reasonable basis for concluding that [the selected address] was the defendant's last known residence." *Id.* Plaintiffs "did not *know* that [the Terra Nova address] was [Walsh's] last known residence." *Id.* They "assumed that it was." *Id.*; *see also* [Doc. 30-1, Tate Decl., ¶ 56 ("This confluence of data points provided [Plaintiffs' attorney] additional basis for serving . . . Walsh at [the Terra Nova] address.")]. Summarily, Plaintiffs "had no real basis for believing that [the Terra Nova address] was [Walsh's] residence." *Collier*, EWCA (Civ) 20, 2006 WL 63678, at *272.

To ensure sure that *Collier*'s directives fit squarely with the facts of this case, the Court notes that there is nothing in the record to even hint to a suggestion that Walsh misled Plaintiffs to believe that the Terra Nova was his residence. To the contrary, Walsh states that Winston, as his ex-wife, was "aware that the Terra Nova address [was] not his residence but belongs to his sister." [Doc. 33-3, Walsh Aff., ¶ 17]. She never

denies it either. Furthermore, the record clearly shows that while Walsh may not have provided any assistance to help Plaintiffs "know" his residence, he certainly did not mislead them into believing that he actually resided at the Terra Nova address. But again, it is Plaintiffs' obligation to take reasonable steps to ascertain Walsh's last known residence. *Collier*, EWCA (Civ) 20, 2006 WL 63678, at *272. True, Plaintiffs research steered them to the Terra Nova address, but when you strip the procedural minutia from this case, you are left with nothing more than an assumption based on public records. And under *Collier*, the claimant's subjective knowledge is critical. A plaintiff must do more than assume, guess, or hope that a selected address is sufficient; she has to know it is.

At the end of the day, the Court is left with this: Walsh says that the Terra Nova address is not his residence, and Plaintiffs offer nothing to the Court to say that it, in fact, is. The documents bearing the Terra Nova address for the Companies House filings and the bills of lading are merely colorable and are not significantly probative to *prove* Walsh's residence. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). Bottom line, Walsh did not reside at the address where Plaintiffs tried to serve him, and they did not know the address of his last known residence. While either one of these facts alone is enough to doom Plaintiffs' service attempt, the fact that both occurred in this case certainly does. All things considered, the Court cannot accept Plaintiffs'

invitation to use a "confluence of data points" to judicially convert an address into a residence when the defendant didn't actually reside there.

**CONCLUSION**

Since Plaintiffs did not serve Walsh at his last known residence, they have failed to comply with the requirements for service on an individual under English law. A failure to serve under English law means they failed to comply with the Hague Convention. And, when they failed to comply with the Hague Convention, they also failed to comply with the Federal Rules concerning service of process for individuals in foreign countries. Consequently, the attempted service is insufficient as a matter of law. Based on this finding, the Court does not have personal jurisdiction over Walsh, and it must **GRANT** Walsh's 12(b)(5)-based Motion to Dismiss [Doc. 21] and **DISMISS** this case. The Court also **DENIES** Walsh's Motion for Summary Judgment [Doc. 33] and the remaining portion of his Motion to Dismiss [Doc. 21] as it relates to Plaintiff Herndon **as moot**.[11]

**SO ORDERED**, this 27th day of March, 2020.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[11] Although the Court lacks the authority to determine whether service in the original state-court action was likewise improper, thereby making the underlying suit void so that it could not be renewed, the Court would be hard pressed to answer that question any other way than it answered the question of service in this case.